UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| WILLIAM JOSEPH HAWK, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 6: 22-028-DCR |
| ) | |
| V. ) | |
| ) | |
| KILOLO KIJAKAZI, Acting ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, ) | **AND ORDER** |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff William Hawk appeals the Acting Commissioner of Social Security's denial of his claim for disability insurance benefits. Specifically, Hawk contends that the ALJ assigned to his case failed to properly evaluate the medical opinion evidence and improperly assessed his credibility in determining that his application for benefits should be denied. Upon review of the record and the parties' arguments, however, the Court finds that the ALJ's decision was based upon substantial evidence and correctly-applied rules of law. As a result, the Acting Commissioner's decision will be affirmed.

**I.**

Hawk filed the present application for disability insurance benefits ("DIB") on February 4, 2020, alleging a disability beginning August 4, 2018. [*See* Administrative Transcript, hereafter, "Tr." 184.] The claim was denied initially on August 29, 2017, and upon reconsideration on October 31, 2017. [Tr. 101, 110] Thereafter, ALJ Joyce Francis held an administrative hearing on January 11, 2021. [Tr. 31-61] She issued a written opinion denying benefits on February 2, 2021. [Tr. 13-25] The Appeals Council denied Hawk's request for

review on December 21, 2021. [Tr. 1-3] Thus, this matter is ripe for judicial review. *See* 42 U.S.C. § 405(g).

## II.

Hawk was 47 years old at the time of ALJ Francis's decision. He is married and lives with his wife and two children. Hawk has a high school diploma and has completed one year of college. [Tr. 216] He previously held various employment positions at Wal-Mart, where he was required to lift 50 to 75 pounds. [Tr. 39-40] He has a driver's license and reported driving short distances a few times per week.

During his administrative hearing before the ALJ, Hawk reported that he was unable to work due to fatigue as a result of two strokes, a heart attack, kidney disease, and diabetes. [Tr. 44] Hawk stated that he had "a lot of pain" in his back, legs, and feet, and that he was unable to sit, stand, or walk for more than 20 minutes. [Tr. 46] He reported that he could no longer participate in activities he used to enjoy such as golf and lawn care.

Hawk was diagnosed with type I diabetes when he was 19 years old (in 1992). He established care for management of his diabetes at Endocrinology Center of Lake Cumberland in May 2018. [Tr. 499] At that time, his A1C level was 8.7%, which indicated inadequate blood glucose control. [Tr. 502] Hawk reported that he did not have time to check his blood sugar while at work. By February 2019, Heidi R. Frey, NP noted that his A1C level was down to 6.8%, which she characterized as "at goal." [Tr. 491] Hawk advised that his blood glucose ran anywhere from 59 to 389, but most days ranged from 100-170s. [Tr. 489]

Hawk was hospitalized in August 2018 for pneumonia. [Tr. 406] Then, in August 2019, he was examined in a hospital emergency department due to right-sided weakness and expressive aphasia. [Tr. 600] He was hospitalized and eventually diagnosed with NSTEMI,

new systolic CHF, and chronic kidney disease, likely stage 2-3.  [Tr. 514]  A cardiac catheterization revealed narrowing of the LAD and he received a cardiac stent.  [Tr. 506]  At discharge, Hawk was stable without complaints.

Hawk was referred to Nephrology Associates of Lexington in April 2019.  [Tr. 723] Meghan Carroll, D.O., noted that Hawk suffered from chronic kidney disease thought to be caused by diabetic neuropathy.  His symptoms included polyuria, nocturia, and edema.  Carroll noted that Hawk "may be a candidate for a combined pancreas/renal transplant."  [Tr. 725]

Hawk also visited the Vanderbilt University Medical Center nephrology/renal transplant clinic in October 2019 and again in January and March 2020.  Julia Breyer Lewis, M.D., diagnosed Hawk with stage 3 chronic kidney disease.  She noted that Hawk's hypertension was not well controlled in October and she adjusted his medication as a result. [Tr. 771, 833, 1029]  Hawk advised Lewis during a telehealth visit in May 2020 that he overall felt well and that his energy was improved.  [Tr. 1084]  Lewis noted that she had discussed the renal replacement therapy options with Hawk and his wife and that Hawk was "leaning toward home dialysis. . . ."  [Tr. 1089]  Hawk also consulted with endocrinologist Chanhaeng Rhee, M.D., at Vanderbilt concerning his diabetes in March 2020 and May 2020.  [Tr. 1053, 1080] Rhee made recommendations concerning Hawk's medication.

Autumn Richardson, APRN, with Lake Cumberland Medical Associates, is Hawk's treating primary care provider.  Hawk visited Richardson in February 2018 for an "annual exam," although Richardson noted that it had been several years since Hawk had been seen. [Tr. 995]  At that time, he continued to utilize an insulin pump for treatment of his diabetes and had no chest pain or shortness of breath.  Richardson started atorvastatin for hyperlipidemia.  [Tr. 998]

Richardson provided several written statements during the relevant time period, apparently in support of Hawk's applications for short-term disability through his employment at Wal-Mart. In March 2019, Richardson provided an "attending physician statement, which stated that Hawk was disabled due to diabetic neuropathy, stage 4 chronic kidney disease and associated muscle weakness, fatigue, and peripheral neuropathy. [Tr. 1131] Richardson provided another letter in July 2019, stating that Hawk's chronic kidney disease is progressive and he "will certainly require a kidney transplantation in the near future." [Tr. 872] Richardson believed Hawk was "unable to work a regular 8-hour day or even part-time hours" due to his multiple health problems. *Id.*

Most recently, Richardson provided an opinion on November 24, 2020. [Tr. 1779] She stated that Hawk suffered from the following medical issues: acute stroke, myocardial infarction with drug-eluting stent placement, cerebrovascular disease, coronary artery disease, stage 4 chronic kidney disease, type 1 diabetes, and diabetic neuropathy. As a result, she reported that he had significant difficulties with performing activities of daily living. Richardson opined that he could not sit, stand, or walk for greater than 30 minutes at a time, and is unable to work a normal 8-hour workday. She also opined that Hawk could not lift, tug, or pull greater than 8 pounds and could not work five days weekly. She stated that he could occasionally carry up to 10 pounds but should avoid bending, stooping, squatting, or climbing. Richardson also indicated that he should avoid extreme heat and cold exposure. *Id.*

Richardson referred Hawk to Wellsprings Wellness in Somerset, Kentucky, for mental health services. During his initial consultation on February 6, 2020, Hawk reported problems with anger, inattention, depression, memory problems, and sleep disturbances. [Tr. 837]

Hawk was calm and cooperative and his thought processes were goal-directed and logical. His perception appeared within normal range and he was oriented to person, time, place, and situation. The clinician made a provisional diagnosis of major depressive disorder, recurrent, moderate. *Id.* In October 2020, Hawk reported having anxiety and being easily overwhelmed. He stated that sources of stress included caring for his aging mother without support from his sibling. [Tr. 1735] Hawk rated his anxiety as a 5 out of 10 and his depression as a 6 out of 10. It appears that the clinician discharged Hawk later in October 2020 after he repeatedly canceled and failed to attend appointments. [Tr. 1742]

Amber Messamore, APRN, of Wellsprings, provided a letter concerning Hawk on November 13, 2020. [Tr. 1733] She reported that he had been diagnosed with major depressive disorder, recurrent, moderate; generalized anxiety disorder; and obsessive compulsive personality disorder. Messamore indicated that Hawk had symptomology consistent with these disorders, including low energy, fatigue, lack of motivation, lack of interest, poor concentration, and sad and irritable moods. Further, he continued to experience moderate symptoms despite pharmacological treatment. Messamore opined that Hawk could not sustain full time employment due to these conditions and that he would experience frequent interruptions and frequent absences due to his treatment and symptoms.

Consultant Jacqueline Fister, M.D., provided an opinion on April, 9, 2020. [Tr. 70-74] After reviewing the medical evidence, Fister concluded that Hawk's statements regarding his symptoms were partially consistent with the total evidence on file. [Tr. 71] Specifically, while Hawk's medically determinable impairments could be expected to produce his pain and other symptoms, Fister did not believe Hawk's statements regarding the intensity, persistence, and functionally limiting effects were substantiated by the objective medical evidence alone. *Id.*

Fister concluded that Hawk could occasionally lift and/or carry 20 pounds, while he could frequently lift and/or carry 10 pounds. She believed he could sit or stand and/or walk for about six hours out of an eight-hour workday. [Tr. 71] And she further opined that he had an unlimited ability to push and pull other than the limitations imposed for lifting and carrying.

Fister also reported that Hawk could frequently stoop, kneel, crouch, and crawl, and had an unlimited ability to balance. [Tr. 72] She reported that he could occasionally climb ramps or stairs but could never climb ladders, ropes, or scaffolds. Fister also concluded that Hawk should avoid all exposure to hazards such as machinery or heights. [Tr. 73] In reaching these conclusions, Fister noted that Hawk's diagnoses could reasonably cause functional limitations, but his functional report indicated that he is able to perform self-care and household chores, as well as driving, shopping.

Rebecca Luking, D.O., reviewed Hawk's file on July 17, 2020. She believed that additional limitations were appropriate based on the continued progression of Hawk's kidney disease and worsening fatigue. [Tr. 93] Luking recommendations differed from Fister's in the following respects: Hawk could stand and/or walk no more than four hours in an eight-hour workday; and he could only occasionally stoop, kneel, crouch, and crawl. [Tr. 92]

Jane Brake, PhD, reviewed Hawk's file to render a mental functional capacity assessment on March 30, 2020. [Tr. 74] She too concluded that one or more of Hawk's diagnoses could reasonably be expected to produce his symptoms, but that the severity was not supported by the evidence of record. [Tr. 71] Brake ultimately concluded that, while Hawk did not have understanding and memory limitations, he did have limitations with respect to sustained concentration and persistence. [Tr. 74] Accordingly, Hawk would have difficulty completing a normal workday and workweek without interruptions from psychologically

based symptoms and performing at a consistent pace without an unreasonable number and length of rest period. Brake also indicated that Hawk's ability to interact with the general public was moderately limited. [Tr. 75] Danelle Stevens-Watkins, PhD echoed Brake's conclusions when she reviewed the file on July 16, 2020. [Tr. 94-96]

ALJ Francis determined that Hawk had the following severe impairments: obesity in conjunction with coronary artery disease; record of transient ischemic incident; chronic kidney disease; diabetes mellitus with retinopathy; anxiety; and depression. [Tr. 16] But after considering the entire record, she determined that Hawk had the functional residual capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b)

> That does not require standing and walking more than 4 hours during an 8-hour workday; never climbing ladders, ropes, and scaffolds; more than occasional climbing ramps and stairs, stooping, kneeling, crouching, or crawling; or any exposure to unprotected heights and dangerous moving machinery. Mentally, he can understand and remember simple instructions and procedures; sustain attention and concentration to complete simple tasks with regular breaks every 2 hours throughout an 8-hour workday; interact frequently with supervisors and coworkers and occasionally interact with the public; and adapt to routine work conditions and occasional workplace changes that are gradually introduced.

[Tr. 19] The ALJ further concluded that Hawk could not perform any of his past work. [Tr. 24] However, based on the vocational expert's testimony, there were jobs existing in significant numbers in the national economy that he could perform. [Tr. 24-25] Accordingly, he was found to be not disabled under the Social Security Act ("Act").

### III.

A "disability" under the Act is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is

made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, the claimant must show that he suffers from a severe impairment or a combination of impairments. 20 C.F.R. § 404.1520(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d). Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination regarding disability based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether he can perform his past work. 20 C.F.R. § 404.1520(e). If he can, he is not disabled. 20 C.F.R. § 404.1520(f).

Under the fifth step of the analysis, if the claimant's impairments prevent him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Before discussing the parties' arguments, it is important to note that this Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards in reaching his decision. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

## IV.   Discussion

### A.   The ALJ's Evaluation of the Opinion Evidence

Hawk first contends that the ALJ failed to evaluate the medical opinion evidence according to law. Specifically, he argues that the ALJ failed to properly analyze the limitations assessed by APRN Richardson, including Hawk's need to elevate his legs at least four times a day; not being able to sit, stand or walk for greater than 30 minutes at a time; not being able to carry more than 10 pounds; and being unable to work an eight-hour day or even part-time hours.

The social security regulations require ALJs to adhere to certain standards in evaluating medical opinions. A "medical opinion" is a statement from a medical source about what an individual can still do despite his impairments and whether the individual has one more impairment related limitations or restrictions. 20 C.F.R. § 404.1513(a)(2). ALJs should not defer or give specific evidentiary weight to any particular opinion. § 416.920c(a). Instead, the ALJ must evaluate the persuasiveness of each medical opinion by considering the following factors: supportability; consistency; relationship with the plaintiff; specialization;

and any other factor that tends to support or contradict the medical opinion. § 416.920c(c).

The first two factors (i.e., supportability and consistency) are the most important and the ALJ must explain how she considered them. § 416.920c(b)(2). The regulations explain that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) … the more persuasive the medical opinions … will be." § 416.920c(c)(1). With respect to consistency, "[t]he more consistent a medical opinion(s) … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be." § 416.920c(c)(2).

The ALJ found Richardson's opinion that Hawk should avoid heavy lifting, tugging, and pulling persuasive as consistent with and supported by the "overwhelming balance" of the evidence. [Tr. 22] The ALJ also found that Richardson's recommendation that Hawk elevate his legs four times per day could be accommodated while off work and during breaks. However, she found Richardson's opinions that Hawk could not work a "normal eight-hour workday … five days weekly" and that he would "be medically disabled for the remainder of his life" unpersuasive, for the following reasons:

> First, components of her statements are conclusory and therefore encroach on the ultimate determination of disability reserved to the Commissioner … Second, findings of the claimant['s] inability to perform a significantly reduced range of sedentary work over a normal workweek are inconsistent with and unsupported by the record of effective record recovery from infarctions with reversible ischemia and heart attack, as well as improved diabetic control with stable retinopathy, as demonstrated by the meticulously analyzed record of typically negative exams, normal cardiology testing (including recovery of normal ejection fraction), negative lab work, unremarkable ultrasounds, and corresponding conservative treatment, not to mention reported independent daily activities.

[Tr. 23]

Hawk contends that the ALJ's failure to explicitly discuss Richardson's opinions regarding his ability to sit, stand, and walk in 30 minute intervals and his 10-pound lifting restriction constitutes reversible error. The ALJ implicitly addressed these opinions, as she gave reasons for rejecting Richardson's claim that Hawk could not perform "a significantly reduced range of sedentary work." Further, "[t]he ALJ is not required to discuss every detail presented in the 'voluminous case records' nor does she need to explain her evaluation of each portion of a medical source's opinion. *Ebeling v. Comm'r of Soc. Sec.*, 2022 WL 3006209, at *3 (W.D. Ky. July 28, 2022) (citing 20 C.F.R. § 404.1520c(b)).

Hawk also argues that the ALJ misrepresented the record by citing to "negative lab work" and general improvements in his cardiac health, while failing to acknowledge the severity of his kidney disease and lower extremity edema. But the ALJ provided a detailed summary of the medical record, observing that, by January 2019, Hawk's chronic kidney disease was "rapidly deteriorating." [Tr. 21] She noted, however, that Hawk began a new drug therapy after which his kidney disease stabilized. While there was discussion of his future candidacy for dialysis and/or a kidney transplant, there was no record of immediate planning or referral. The ALJ also cited to specific portions of the record in which, in January and August of 2020, Hawk had acknowledged experiencing no more than intermittent swelling of the lower extremities and no serious difficulty walking or climbing stairs.

Finally, Richardson's opinion that Hawk is disabled *is* a decision reserved to the Commissioner and, therefore, the ALJ did not err in rejecting it. *Beery v. Comm'r of Soc. Sec.*, 819 F. App'x 405, 408 (6th Cir. 2020) (citing 20 C.F.R. § 404.1527(d)(1)). Accordingly, the ALJ did not err in her evaluation of the medical opinion evidence.

### B. The ALJ's Assessment of Pain and Other Subjective Symptoms

ALJs are required to apply a two-step analysis in evaluating a claimant's subjective complaints of pain and other symptoms. First, she must determine whether an "underlying medically determinable physical or mental impairment … could reasonably be expected to produce an individual's symptoms, such as pain." Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *3 (Mar. 28, 2016). Second, the ALJ must evaluate the "intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.*

The ALJ properly applied this analysis and determined that, while Hawk had medically determinable impairments that could be expected to cause his alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of the symptoms was not entirely consistent with the evidence of record. [Tr. 20] Specifically, the ALJ noted that Hawk had generally recovered well from his stroke and heart attack, as the stroke only caused "reversible ischemia" and the LAD occlusion was treated with a stent. Further, Hawk was "rapidly stabilized on a medication regimen on low-dose aspirin, Lipitor, Coreg, and then Plavix upon discharge." *Id.* Since then, he had reported "doing well" with only conservative treatment.

ALJ Francis also observed that Hawk's diabetes had remained stable, with most blood sugar readings in the "100-120s" range. Additionally, his chronic kidney disease had improved after initiation of a new drug therapy in 2019 and he denied any serious difficulty with walking or climbing stairs. The ALJ also observed that the record was " profoundly irreconcilable" with Hawk's claims of a "devastatingly sedentary and withdrawn existence." In addition to his self-reported daily activities, Hawk advised his counselor at Wellsprings that he was taking

care of his mother without assistance from his siblings and that he had been "busy attempting to sell his home." *Id.* at 22. Based on the foregoing, the ALJ sufficiently explained her reasons for finding that Hawk's claims regarding the intensity and persistence of his symptoms were not fully supported by the record.

Hawk contends that the ALJ's credibility assessment was defective because she "neglected to consider [his] stellar work history." Specifically, he argues that she was required to consider his "uninterrupted 27-year work history" and did not. While the ALJ did not include Hawk's work history in her opinion, there is no requirement that she do so. *Dutkiewicz v. Comm'r of Soc. Sec.*, 663 F. App'x 430, 433 (6th Cir. 2016); *Mahoney v. Comm'r of Soc. Sec.*, 2021 WL 4493680, at *5 (W.D. Ky. Sept. 30, 2021). Further, the ALJ discussed Hawk's work history with him extensively during his evidentiary hearing. [Tr. 37-43] There is nothing to suggest that the ALJ did not consider this evidence and her failure to discuss it in the written opinion does not constitute error.

### C. Substantial Evidence Supports the ALJ's Decision

Hawk's RFC determination is supported by substantial evidence. This includes the opinions of consultant Rebecca Luking, D.O, and Jane Brake, PhD. The RFC is also supported, in large part, by the opinions of Autumn Richardson, APRN, except the ALJ declined to credit Richardson's statements that Hawk could not work eight hours, five days per week; that he could only sit, stand, or walk 30 minutes at a time; and that he could only occasionally lift 10 pounds. The ALJ noted that these limitations were not supported by any objective evidence, the consultants' opinions, or by Hawk's own reports regarding his activities of daily living, which included a full range of personal care, cleaning the house, running errands, and attending his child's athletic events. The ALJ also noted that, while

Richardson stated that a kidney/pancreas transplant was imminent, other medical evidence (including notes from the Vanderbilt transplant clinic) indicated that Hawk was responding satisfactorily to conservative treatment.

A qualified vocational expert identified specific jobs existing in the national economy that an individual with this RFC would be able to perform. [Tr. 24-25] The ALJ's decision regarding this determination is supported by substantial evidence.

V.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. Plaintiff Hawk's motion for summary judgment [Record No. 13] is **DENIED**.

2. Defendant Acting Commissioner of Social Security's motion for summary judgment [Record No. 18] is **GRANTED**.

Dated: September 21, 2022.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky